UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATHAN BYERLY,<br><br>              Plaintiff,<br><br>   v.<br><br>JOHN DOE GOVERNOR; MARK WORTHINGTON; KENNETH MEZO; and IDAHO DEPARTMENT OF CORRECTION,<br><br>              Defendants. | Case No. 1:19-cv-00230-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

      The Clerk of Court conditionally filed Plaintiff Nathan Byerly's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. Plaintiff has since filed an Amended Complaint. The Court now reviews the Amended Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

1.    **Screening Requirement**

      The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). And a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

3. **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho Maximum Security Institution ("IMSI"). Plaintiff states that, in January 2018, he was transferred from one Idaho prison to another without his property being delivered in a timely manner. (Am. Compl., Dkt. 5, at 2.)

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

Plaintiff "made verbal and written requests for delivery" of this property before "demanding to speak with the shift commander." (*Id*.) Plaintiff alleges that a "staff force" then entered Plaintiff's cell and "utilize[d] force and joint manipulation to assault and batter Plaintiff," stripped him naked, and placed him in a "hard cell" without clothing or bedding and without access to water or a toilet. (*Id*.) Plaintiff suffered injuries in this incident, include sprained wrists and a sprained knee that required a one-year medical treatment plan. Plaintiff claims, without any factual support, that the Governor of the State of Idaho "order[ed] and command[ed]" this action by correctional officers.[1] (*Id*.)

Plaintiff also alleges that, on November 2, 2018, he was "moved by use of force" to IMSI. Plaintiff states that this transfer "resulted in re-injury from injuries sustained in an unnecessary assault a few months earlier." (*Id*. at 3.)

Later that month, Plaintiff was involved in an altercation with Defendants Worthington and Mezo. According to Plaintiff, he approached the property cart to retrieve some of his personal property, when Worthington "responded with menace toward the Plaintiff and attempt toward seizure-arrest-restraint response." (*Id*. at 4.) Plaintiff struck his head out toward Worthington, allegedly in self-defense, after which Worthington and Mezo used force to subdue Plaintiff. Worthington struck Plaintiff in the head several times, while Mezo approached Plaintiff from behind, called Plaintiff an

---

[1] Plaintiff attached to his Amended Complaint a disciplinary offense report regarding this incident. According to that report, Plaintiff had covered his cell window—which is a security risk—because he was upset about the "property issue," and Plaintiff did not comply with instructions to uncover the window. The officer who issued the report stated that Plaintiff's refusal to comply "resulted in an emergency being called and a reactive use of force occurring." (Dkt. 5 at 13.)

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

"SOB," and struck Plaintiff "in the face as he turned toward Mezo." (*Id*. at 4, 6.) Plaintiff struck Mezo in the eye, and several additional correctional officers then approached and restrained Plaintiff.

Plaintiff suffered injuries during the November 2018 altercation, including nerve damage, torn or twisted joints, and a concussion. (*Id*. at 7.) He was also criminally charged for his conduct during that altercation, issued a disciplinary offense report, and placed in segregation—with its attendant property restrictions—for an undisclosed period of time. (*Id*.)

**4. Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Amended Complaint. The Court will, however, grant Plaintiff 28 days to file a second amended complaint. Any second amended complaint should take into consideration the following.

*A. Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

Prison officials generally are not liable in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

"A defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or

damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

In the Amended Complaint, Plaintiff cites various constitutional and statutory provisions with respect to his § 1983 claims. However, his allegations appear to implicate only the Eighth and Fourteenth Amendments.[2]

      i.      <u>Eighth Amendment Claims</u>

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. Although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted) An Eighth Amendment claim requires the plaintiff to show that his injury

---

[2] Plaintiff also relies on the United Nations Declaration of Human Rights. However, such declarations do not create a private right of action in federal court. *See, e.g., Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (stating that the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights "did not [themselves] create obligations enforceable in the federal courts"); *Bey v. Malec*, 2018 WL 4585472 at *2 (N.D. Cal. Sept. 25, 2018) (dismissing a plaintiff's claims for violations of the United Nations Declaration on the Rights of Indigenous Peoples and the Universal Declaration of Human Rights because neither Declaration is "binding in federal court").

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

was the result of "deliberate indifference to a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

This analysis involves an objective and a subjective prong. First, to constitute cruel and unusual punishment, the alleged deprivation must be, in objective terms, "sufficiently serious" or "grave." *Id.* at 834; *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the prison official must subjectively "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if the official knows that prisoners face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials are not liable under the Eighth Amendment if they lacked subjective knowledge of the risk or if they responded reasonably to the risk, even if the harm ultimately was not prevented or abated. *Id.* at 844-45. Mere negligence on the part of a prison official is not sufficient to establish liability; rather, the official's conduct must have been wanton. *Id.* at 835.

A "severe or prolonged" lack of sanitation or other humane conditions of confinement can violate the Eighth Amendment. *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995). However, unsanitary conditions do not give rise to a constitutional violation if they are merely temporary. *Id.* at 1315. "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

The Eighth Amendment also prohibits correctional officers from using excessive force against inmates. However, because the amendment prohibits only "cruel and unusual" punishment, a prison guard's use of force violates the Constitution only if the force is applied "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted). "This standard necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction."[3] *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2003). Therefore, a prisoner asserting an excessive force claim must show "malicious and sadistic force, not merely objectively unreasonable force." *Id*.

Not every "malevolent touch" by a prison guard gives rise to an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

---

[3] Plaintiff has not stated a plausible claim under the Fourth Amendment, because a prisoner has no reasonable expectation of privacy entitling him to that amendment's protection against unreasonable searches and seizures. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

With respect to Plaintiff's claims regarding the conditions in the "hard cell," the Amended Complaint does not include sufficient allegations for a factfinder to infer that any named Defendant acted with deliberate indifference. Additionally, Plaintiff has not plausibly alleged that the conditions in the hard cell objectively posed a substantial risk of serious harm to Plaintiff or deprived him of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Without more facts, such as the length of time Plaintiff was in the hard cell, the Amended Complaint does not state a plausible conditions-of-confinement claim.

As for Plaintiff's excessive force claims arising from the January 2018 and November 2018 incidents, the allegations in the Amended Complaint do not give rise to a reasonable inference that any Defendant acted maliciously and sadistically, for the very purpose of harming Plaintiff. Plaintiff's claims against the Governor are implausible for an additional reason: no facts support Plaintiff's conclusory allegation that the Governor ordered correctional officers to enter Plaintiff's cell and engage in aggressive behavior, or that the Governor otherwise personally participated in the January 2018 incident.

Plaintiff should keep the above standards in mind if he files a second amended complaint.

      ii.      <u>Fourteenth Amendment Claims</u>

          a)    *Due Process Claims*

The right to procedural due process under the Fourteenth Amendment prohibits the government from depriving an individual of a liberty or property interest without

following the proper procedures for doing so.[4] *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). Within the prison context, liberty interests are "generally limited to freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

With respect to a procedural due process claim regarding prison disciplinary proceedings and disciplinary segregation, a district court must analyze three factors in determining whether a prisoner has or had a liberty interest in avoiding discipline: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation (such as administrative segregation and protective custody); (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected. *Id*. at 486-87. If these factors are not met, a court may find there is no liberty interest in avoiding prison discipline, which means that a prisoner has no due process claim arising from the

---

[4] The Due Process Clause also includes the right to substantive due process, which protects individuals from being deprived of certain interests notwithstanding the procedures followed. *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). A substantive due process violation is one which "shocks the conscience." *Wood v. Ostrander*, 879 F.2d 583, 591 n.8 (9th Cir. 1989). It occurs in a situation in which "the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1484 (9th Cir. 1989) (internal quotation marks omitted). However, if a more specific constitutional amendment—such as the Eighth Amendment—"provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff's allegations do not appear to implicate substantive due process.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

disciplinary proceeding. Applying these factors in *Sandin*, the Supreme Court determined that a prisoner lacked a protectable liberty interest in avoiding 30 days of confinement in disciplinary segregation. *Id.* at 487.

To the extent Plaintiff is alleging a due process claim based on his disciplinary proceedings and placement in disciplinary segregation, he has not plausibly alleged that he had a liberty interest in remaining free from discipline. The Amended Complaint does not include any allegations respecting the factors identified in *Sandin*.

To the extent Plaintiff is claiming that the deprivation of his personal property constitutes a denial of due process, he has also not stated a plausible claim. The Due Process Clause is "not implicated by a negligent act of an official causing unintended loss of or injury to … property," *Daniels*, 474 U.S. at 328 (emphasis omitted), and even the intentional deprivation of personal property by prison officials will not support a due process claim under § 1983 if the prisoner has an adequate remedy under state law, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Because Idaho has adopted the Idaho Tort Claims Act, *see* Idaho Code § 6-901, *et seq.*, Plaintiff had an adequate remedy under the ITCA. Therefore, Plaintiff has not stated a plausible due process claim.

    b)  *Equal Protection Claims*

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary discrimination by government officials. But "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). And even where similarly-situated persons are treated differently by the state, "state action is presumed constitutional and

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id*. at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440 (1985). Otherwise, equal protection claims generally are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). In a rational basis analysis, the relevant inquiry is whether Defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted).

In addition to the deference inherent in a rational basis inquiry, an additional layer of deference to the decisions of prison officials is required under *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), which holds that action by a prison official is constitutional so long as it is reasonably related to a legitimate penological purpose. *See also Walker v.*

*Gomez,* 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)). That is, any rational basis for dissimilar treatment in prison will defeat a prisoner's equal protection claim. *Id.*

Plaintiff has not plausibly alleged that he was treated differently from other similarly-situated prisoners or that, even if he was, there was no rational basis for the dissimilar treatment. Plaintiff may attempt to remedy these deficiencies in a second amended complaint.

For the reasons set forth above, the Amended complaint fails to state a plausible claim under 42 U.S.C. § 1983.[5]

### B.     *ADA Claims*

Plaintiff also cites the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, which generally prohibits discrimination on the basis of an individual's disability. (*See* Dkt. 5 at 2.) Title II of the ADA applies to an "individual with a disability

---

[5] Plaintiff's § 1983 claims against the IDOC are barred for the additional reason that the IDOC is immune from suit in federal court. The Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state or state entity absent a waiver of state sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not constitute such a waiver, and Idaho itself has not waived its sovereign immunity for constitutional claims. *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (unpublished). Moreover, only a "person" may be sued pursuant to 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

In addition, because the Amended Complaint fails to state a plausible § 1983 claim, the Court need not consider whether Plaintiff's request for the dismissal of his pending state criminal charges would require abstention under *Younger v. Harris*, 401 U.S. 37 (1971), which generally prohibits federal courts from interfering in criminal matters still pending in state court.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

who, with or without reasonable modifications to rules, policies, or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Title II extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities because of a disability. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998).

Under the ADA, governmental entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

In order to proceed with an ADA claim, Plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his

disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Unlike § 1983 claims, a Title II ADA claim must—by statutory definition—be brought against the state or the state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity for states for conduct that actually violates the Fourteenth Amendment); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Claims against individuals asserted under the ADA are treated as official capacity claims because no individual capacity claims exist under the statute. *See, e.g., Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).

There are no allegations in the Amended Complaint supporting a plausible inference that Plaintiff was discriminated against on the basis of disability. Plaintiff's passing reference to his disability is insufficient. (*See* Dkt. 5 at 2.)

C. *State Law Claims*

In addition to federal claims, Plaintiff attempts to assert claims based on Idaho criminal statutes. However, the Court has no jurisdiction to hear state criminal matters.

As for Plaintiff's request for a civil remedy, it does not appear that the Idaho legislature has created a private right of action under any of the cited criminal statutes. In Idaho, "[w]hen a legislative provision protects a class of persons … but does not provide a civil remedy for the violation," a court may "accord to an injured member of the class a

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**

right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action." *Yoakum v. Hartford Fire Ins. Co.,* 923 P.2d 416, 421 (Idaho 1996) (emphasis omitted) (relying on Restatement (Second) of Torts § 874A). Such a right of action is implied if the court "determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision." *Id.*

In *Yoakum*, the Idaho Supreme Court held that there was no private right of action under criminal statutes where (1) those statutes were intended to protect the general public and provided for a criminal punishment, and (2) there was no indication that the legislature intended to create a private cause of action or that providing an additional civil remedy was necessary to assure the effectiveness of the statutes. *Id.* The same factors exist here with respect to the criminal statutes cited by Plaintiff. Therefore, "[i]n the absence of strong indicia of a contrary legislative intent, [the Court] ... conclude[s] that the legislature provided precisely the remedies it considered appropriate." *Id.* (relying on *Middlesex County Sewerage Auth. v. National Sea Clammers*, 453 U.S. 1, 15 (1981).

Because there is no private right of action based on Idaho's criminal statutes, Plaintiff's state law claims are not plausible.[6]

---

[6] Moreover, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over state law claims in any event. *See* U.S.C. § 1367(c). If Plaintiff is allowed to proceed on a federal claim in a second amended complaint, and if the second amended complaint states a plausible state law claim, the Court will reconsider the issue of supplemental jurisdiction. And although Plaintiff also invokes diversity of citizenship with respect to his state law claims (*see* Dkt. 5 at 1), he has not alleged that the requirements of jurisdiction under 28 U.S.C. § 1332—complete diversity between the parties and an amount of controversy of at least $75,000—are satisfied.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 16**

## 5. Standards for Second Amended Complaint

If Plaintiff chooses to file a second amended complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or due process claim; (7) the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 17**

injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The second amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Second Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files a second amended complaint, Plaintiff must also file a "Motion to Review the Second Amended Complaint." If Plaintiff does not amend within 28 days, or

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 18**

if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1. Plaintiff has 28 days within which to file a second amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Second Amended Complaint. If Plaintiff does not amend within 28 days, this case may be dismissed without further notice.

2. Plaintiff's Motion for Temporary Stay of Proceedings (Dkt. 8) is DENIED.

DATED: September 24, 2019

B. Lynn Winmill
U.S. District Court Judge